IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROBERT G. WING, as Receiver for VESCOR CAPITAL CORP., a Nevada corporation, VESCOR CAPITAL, INC., a Nevada Corporation, VESCORP CAPITAL, LLC, a Nevada limited liability company, VESCORP CAPITAL IV-A, LLC, a Nevada limited liability company, and VESCORP CAPITAL IV-M, LLC, a Nevada limited liability company, and their related entities,<br><br>　　　Plaintiffs,<br><br>　　　vs.<br><br>WILLIAM J. HAMMONS, an individual, BILO 1989 TRUST DATED JULY 13, 1989, BILL HAMMONS AND ASSOCIATES, BILL HAMMONS INVESTMENTS, AND HAMMONS FAMILY LIMITED PARTNERSHIP, a Nevada limited partnership,<br><br>　　　Defendants, | MEMORANDUM DECISION AND ORDER<br><br><br><br><br>Case No. 2:08-CV-00620<br><br><br><br><br>Judge Dee Benson |

　　　Before the Court is a motion to dismiss for lack of standing brought by Defendants William J. Hammons, an individual, BILO 1989 Trust Dated July 13, 1989, Bill Hammons and Associates, Bill Hammons Investments, and Hammons Family Limited Partnership, a Nevada

1

limited partnership (collectively referred to as "Hammons"). During the course of briefing this motion, Hammons brought a motion to strike several items contained in the Receiver's opposition to the original motion to dismiss. The Court held a hearing covering both motions on Monday, April 20, 2009, at which the defendants were represented by Clifford V. Dunn. The Receiver, Robert G. Wing, was present and represented by M. David Eckersley. After review and consideration of the arguments presented by counsel and the briefs submitted by the parties, the Court enters the following Memorandum Decision and Order.

## I. Factual Background

This action is one of many arising out of the collapse of an alleged Ponzi scheme orchestrated and run by Val Edmund Southwick through a complex web of over 150 corporations and limited liability companies. On February 6, 2008, the United States Securities and Exchange Commission ("SEC") filed suit against Southwick and VesCor, alleging violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. On March 31, 2008, in a separate state action, Southwick pleaded guilty to nine counts of securities fraud, each a felony in the second degree, in the Third District Court of Utah, and was later sentenced to serve nine consecutive 1-15 year prison terms, the maximum allowed by State law. On May 5, 2008, the Court appointed Robert G. Wing as Receiver for VesCor Capital Corp., VesCor Capital, Inc., VesCorp Capital, LLC, VesCorp Capital IV-A, LLC, VesCorp Capital IV-M, LLC, and all affiliated limited partnerships, corporations or other business entities (collectively, "VesCor").

The Receiver brought the present lawsuit on August 15, 2008, against Hammons, who allegedly "acted as a sales agent or broker for VesCor," invested with VesCor, and ultimately

received "much more money from VesCor than they invested." First Amended Complaint, Dkt. 4, ¶ 19-21. The Receiver alleges that these payments constitute fraudulent transfers to the extent that they exceeded the amount initially invested by Hammons, and therefore seeks their return. *Id.* ¶ 24. Specifically, the Receiver alleges that because the payments were made as part of a Ponzi scheme, they were "by definition" made to hinder, delay or defraud VesCor's creditors, *id.* ¶ 23, and further that they were made at a time when VesCor was insolvent and that Hammons did not give substantially equivalent value for the transfers or take them in good faith, *id.* ¶ 24. Alternatively, the Receiver seeks the return of the payments to Hammons under an unjust enrichment theory. *Id.* ¶ 25-31.

## **II. Discussion**

Hammons moved this Court to dismiss on the basis that the Receiver lacked standing to bring this suit under the Utah Fraudulent Transfer Act. Hammons Memo in Support, Dkt. 11, at 6-9. In opposing this motion, the Receiver sought to introduce evidence contained in the Criminal Information and Affidavit of Probable Cause filed in a recent state court case filed in the Fifth Judicial District in Washington County, Utah, in which Mr. Hammons was charged with five counts of securities fraud, four counts of sale of securities by an unregistered agent, one count of abuse of a vulnerable adult, and one count of pattern of unlawful activity. The Receiver sought to introduce this evidence to highlight the extent of Mr. Hammons's involvement in the VesCor scheme. Hammons then moved to strike both the Criminal Information and the Affidavit of Probable Cause on the grounds that they contained (double) hearsay and are irrelevant to the standing issue presented in the motion to dismiss. The Court will address each motion in turn.

### A. Motion to Dismiss for Lack of Standing

The seminal case addressing whether a Federal Equity Receiver has standing to assert fraudulent transfer and unjust enrichment claims is *Scholes v. Lehman*, 56 F.3d 750 (7th Cir. 1993). In *Scholes*, the Seventh Circuit was confronted with arguments similar to the ones Hammons is making here–namely, that a Receiver in a Ponzi scheme case does not have standing to avoid the transactions voluntarily made by the debtor because the Receiver technically stands in that debtor's, and not the defrauded creditors, shoes. *Id.* at 753. The Seventh Circuit held that though the Receiver and the Ponzi operator arguably stood in the same shoes, they nevertheless wore different hats: the Ponzi operator, on the one hand, was a *tort debtor* by virtue of the fact that he used the entities under his control to perpetrate fraud; the Receiver, on the other, was a *tort creditor* by virtue of the fact that the entities, once freed from the Ponzi operator's control, became entitled to the return of payments made in furtherance of the operator's scheme. *Id.* at 754 ("The corporations, Douglas's robotic tools, were nevertheless in the eyes of the law separate legal entities with rights and duties. . . . The appointment of the receiver removed the wrongdoer from the scene. The corporations were no more Douglas's zombies. Freed from his spell they became entitled to the return of the moneys–for the benefit not of Douglas but of innocent investors–that Douglas had made the corporations divert to unauthorized purposes.").

The reasoning in *Scholes* has been endorsed in several Ponzi scheme cases involving federal equity receivers. *See, e.g.*, *Donell v. Kowell*, 533 F.3d 762, 777 (9 th Cir. 2008) ("The Receiver has standing to bring this suit because, although the losing investors will ultimately

benefit from the asset recovery, the Receiver is in fact suing to redress injuries that Wallenbrock suffered when its managers caused Wallenbrock to commit waste and fraud."); In re *Burton Wiand*, No. 8:05-CV-1856-T-27MSS, 2007 WL 963165, at *2 (M.D.Fla. Mar. 27, 2007) ("Because the corporation was injured by the diversion of its assets, the receiver, standing in the shoes of the corporation, had standing to set aside the fraudulent transfers."); *Quilling v. Cristell*, No. 3:04-CV-252, 2006 WL 316981, at *6 (W.D.N.C. Feb. 9, 2006) ("Under the clear and persuasive reasoning of the court in *Scholes*, the Receiver, as receiver for all entities owned or controlled by Gilliland, including the Gilliland Entities, properly has standing to bring the fraudulent transfer claims that he is asserting against Defendnats."); *Obermaier v. Arnett*, No. 2:02-CV-111, 2002 WL 31654535, at *4 (M.D.Fla. Nov. 20, 2002) ("The Receiver, as an equity receiver, clearly has standing to bring claims if the causes of action attempt to redress injuries to the Receivership Entities.").

Against the weight of this authority, Hammons has not pointed the Court to a single Ponzi scheme receivership case that criticizes the approach taken in *Scholes*. Instead, Hammons focuses on the differences between the Illinois fraudulent-conveyance statute at issue in *Scholes* and Utah's version of the Uniform Fraudulent Transfer Act (UFTA). Utah Code Ann. § § 25-6-1 to -13. Whereas the Illinois statute stated that fraudulent conveyances are void against "creditors . . . and other persons," *see Scholes*, 56 F.3d at 753, the UFTA makes transfers fraudulent "as to creditors" only and does not include the language "and other persons." Utah Code Ann. § § 25-6-5 & -6.

Hammons's argument is unpersuasive for two reasons. First and foremost, under *Scholes*,

a receiver in a Ponzi case *is* defined as a creditor for the purposes of establishing standing, so the fact that the Illinois statute at issue also applies to "other persons" is irrelevant. *See Scholes*, 56 F.3d at 753-55. Second, Utah courts have consistently construed the UFTA liberally "to reach all artifices and evasions designed to rob the Act of its full force and effect." *Bradford v. Bradford*, 1999 UT App 373, ¶ 5, 993 P.2d 887, 891 (quoting *Butler v. Wilkinson*, 740 P.2d 1244, 1260 (Utah 1987)); *see Macris & Associates, Inc. v. Neways, Inc.*, 2002 UT App 406, ¶ 4, 60 P.3d 1176, 1180 ("Because [the UUFTA] is remedial in nature, it should be liberally construed.") (quoting *National Loan Investors, L.P. v. Givens*, 952 P.2d 1067, 1069 (Utah 1998); *see also Givan v. Lambeth*, 351 P.2d 959, 962 (Utah 1960) ("All statutes made against fraud should be liberally and beneficially expounded to suppress the fraud.") (quotation omitted).

The Court therefore holds that the Receiver has standing to assert fraudulent transfer and unjust enrichment claims against the alleged "winners" of Southwick's Ponzi scheme. The entities in receivership were injured when Southwick used them to commit fraud and waste. Once Southwick was removed from the scene, those entities, now under the auspices of the Receiver, are entitled to seek the return of these fraudulently dissipated payments. Accordingly, Hammons motion to dismiss for lack of standing is DENIED.

### B. Motion to Strike

The Court's standard of review on a motion to dismiss for lack of standing is to "accept as true all material allegations of the complaint," and to "construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). It is also "within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by

affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Id.* Since the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Nonetheless, "[a]t the pleading state, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990).

In opposing the defendant's motion to dismiss for lack of standing, the Receiver sought to support the allegations in the first amended complaint regarding Mr. Hammons' integral role in the VesCor scheme by citing to, and attaching, a copy of the Criminal Information and Affidavit of Probable Cause associated with Mr. Hammons' criminal case. The Receiver noted that according to the Affidavit of Probable Cause, Mr. Hammons made several material misrepresentations and material omissions to some of VesCor's investors. The Affidavit was prepared by Jennifer Korb, a Securities Analyst for the Utah Department of Commerce, Division of Securities, and contains both statements made by her and statements of those interviewed by her during the course of her investigation. Under *Lujan*, the court would ordinarily next proceed to determine whether admitting these statements comports with the Federal Rules of Evidence.

In the present case, however, the allegations appearing in the complaint, when accepted as true and construed in favor of the Receiver, are sufficient to establish the Receiver's standing.

The First Amended Complaint sufficiently alleges the existence of Southwick's Ponzi scheme. First Amended Complaint, Dkt. 4, ¶ 8-15. It also alleges Hammons' status as an alleged "winner" of that scheme, as defined as an investor with VesCor who received much more money from VesCor than he invested." *Id.* ¶ 17, 21. Finally, it also alleges that the payments were made to Hammons at a time when VesCor was being operated as a Ponzi scheme, at a time when VesCor was by definition insolvent, and the payments in turn were by definition made to hinder, delay, or defraud the creditors and/or investors of VesCor. *Id.* ¶ 23-24. The Receiver is free to establish, and the defendants are free to contest, via admissible evidence at a later point in the proceedings, whether or not Hammons was "an integral part of the VesCor scheme." Plaintiff's Opposition to Motion to Dismiss, Dkt. 12, at 2; Defendants' Reply to Motion to Strike, Dkt. 18, at 3. This additional fact, however, is simply not dispositive of the present motion given the sufficiency of the allegations contained in the Receiver's First Amended Complaint. Accordingly, Hammons's motion to strike is MOOT.

### III. Conclusion

For the reasons set forth above, Hammons's motion to dismiss for lack of standing is hereby DENIED. In addition, under the reasoning applied by the Court, Hammons's motion to strike all the facts cited in, and exhibits attached to, plaintiff's response to Hammons's original motion is MOOT.

**IT IS SO ORDERED.**

Dated this 14th of May, 2009

_____

Judge Dee Benson
United States District Court